UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL K. GREGORY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LT. K. ZIMMERMAN, C.O. LOPEZ, )<br>C.O. A. LAGUNAS, C.O. C. WOOLFORK, )<br>SGT. M. FLORER, C.O. M. MALDONADO, )<br>and SGT. S. BEACH, )<br>)<br>Defendants. ) | 3:18CV444-PPS/MGG |

**OPINION AND ORDER**

Prisoner and plaintiff Michael Gregory filed this lawsuit under 42 U.S.C. §1983 alleging that corrections officers at Indiana State Prison violated his constitutional rights by their use of force during an episode that occurred on April 2, 2017.  The case was filed in June 2018 and has been litigated now for more than five years.  Counsel was appointed to represent Gregory in December 2019.

With a January 2023 trial date looming, the parties requested a settlement conference which Magistrate Judge Gotsch held on December 12, 2022.  [DE 188, 194, 200.]  The docket reflects that although the matter did not settle that day, Judge Gotsch, made a mediator's proposal, and set a deadline of noon on December 16 for defendants to accept.  [DE 200.]  If the defendants accepted the proposal, Gregory was given three days to either accept or reject it.[*Id*.]  On December 20, Judge Gotsch made a docket entry reflecting that he'd been notified that the parties had reached a settlement, and setting February 5, 2023 as the deadline for the filing of dismissal papers.  [DE 203.]  Now before

me is a motion to enforce the settlement agreement brought by the defendants who remain in the case.[1]  [DE 210.]

## Legal Principles

"[A] district court has the inherent authority to summarily enforce a settlement agreement." *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445, 449 (7th Cir. 2004).  I apply Indiana law in determining the elements of contract formation and whether an enforceable oral settlement was reached.  *Dillard v. Starcon International, Inc.*, 483 F.3d 502, 506, 507 (7th Cir. 2007); *Sims-Madison,* 379 F.3d at 448.  Under Indiana law, a contract is not formed absent "[a] meeting of the minds of the contracting parties, having the same intent."  *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind.Ct.App. 2005).  But the relevant intent is "not the parties's subjective intents but their outward manifestation of it."  *Id*.  "The intention of the parties to a contract is a factual matter to be determined from all the circumstances."  *Id.*  "All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made….; absolute certainty in all terms is not required."  *Conwell v. Gray Loon Outdoor Marketing Group, Inc.*, 906 N.E.2d 805, 813 (Ind. 2009) [DE 212 at 6.]

Parties can enter voluntarily and knowingly into a settlement agreement "either personally or by providing their attorneys with authority to settle."  *Whittington v. Trustees of Purdue University*, No. 2:09cv9, 2011 WL 1336514, at *2 (N.D.Ind.  April 5,

---

[1] Defendant Michael Lopez was granted summary judgment on October 4, 2019. [DE 57.] Plaintiff Gregory obtained a default judgment against defendant Courtney Woolfork on June 28, 2022.  [DE 170, 171.]  The case has proceeded against the five remaining correctional officers Zimmerman, Lagunas, Maldonado, Florer and Beach.

2011). "A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient" or otherwise changes his mind. *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454 (7th Cir. 1986). "Indiana strongly favors settlement agreements," and "if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003)

### Facts

My earlier recap of the course of the putative settlement of the case included what the docket reflects. Additional facts are demonstrated by the record the parties have created on the motion to enforce settlement. Gregory's counsel report that after being notified that the defendants had accepted the mediator's proposal, they "conferred with Mr. Gregory regarding the settlement offer, advising him that Defendants had not yet proposed a written settlement agreement and that the precise terms of the settlement agreement were not yet finalized." [DE 212 at ¶6.] According to Gregory's attorneys, "[a]fter a lengthy conversation, Mr. Gregory begrudgingly consented to receiving $8,000 in exchange for release of his pending claims," and "counsel notified Judge Gotsch accordingly." [*Id*.]

Emails exchanged between counsel on December 21, 2022 express each side's mutual satisfaction with reaching a settlement and putting the matter behind them. Counsel for the defendants agreed to take the lead on preparing a settlement agreement and to obtain the approvals at higher levels of state government as required by state law.

3

[DE 210-1 at 4.] A draft settlement agreement was provided to Gregory's counsel on December 22. [*Id.* at 3; DE 212 at ¶7.] Upon reviewing the draft, Gregory's counsel were concerned that the proposed release language "would have precluded Mr. Gregory from further motion practice to collect his $15,000 default judgment against Defendant Woolfork." [DE 212 at ¶9.] On January 3, apparently before counsel had the opportunity to communicate that objection about the release language to Gregory, counsel received a letter from Gregory "dated December 22, 2022, in which Mr. Gregory informed his attorneys that he wished to reject the settlement." [DE 212 at ¶10.]

On January 11, having not heard from plaintiff's counsel, an Assistant Attorney General representing the remaining defendants sent an email to plaintiff's counsel advising that the "governor's office has issued final approval for an $8,000 settlement with Gregory," and asking if Gregory "had the chance to sign the draft settlement agreement." [*Id.* at 2-3.] In a response that same date (January 11), one of Gregory's attorneys provided this update:

> We received a letter from Mr. Gregory on January 3 which indicated that he no longer wished to settle with the five defendants represented by your office, and that he instead wanted to proceed to trial. We promptly scheduled a call with Mr. Gregory to discuss. Despite our advice and recommendation, our client made clear that he rejects the settlement and will refuse to sign the settlement agreement. While this is an unfortunate conclusion to the efforts the parties and the Court have invested in settlement negotiations, we have an obligation to comply with our client's wishes. Please let us know when you have a chance to discuss the steps the parties should take to notify the Court of this development.

[*Id.* at 2.]

4

The Court received a letter from Mr. Gregory, acting *pro se*, on February 2, offering his account of the settlement efforts. [DE 213.] The letter bolsters the conclusion that during consultation with his attorneys on December 19, Gregory initially agreed to the settlement for $8,000, although he was extremely frustrated with his counsel and angry at the sum.[2] [DE 213 at 2.] Gregory repeatedly describes the $8,000 figure as "immoral and unjust," given his description of what he has suffered. [*Id.* at 1, 2, 3.] Referring to the letter he wrote to his attorneys dated December 22, which counsel received on January 3, Gregory explains that he wrote the letter to tell his attorneys that he did not want to accept the "immoral and unjust" proposed settlement. [*Id.*]

Although Gregory's letter vehemently expresses his unwillingness to release any other "civil suits, concerning the I.D.O.C. employees who continue to harm me and violate my constitutional rights," he acknowledges that he only received the proposed release on January 24, 2023, well after communicating to counsel that he was not satisfied with the amount of the settlement. [*Id.* at 3.] Gregory's explanation for his rejection of a broad release does not include any mention of his default judgment against Woolfork, which supports my conclusion that that particular concern belonged to his counsel rather than to Gregory, and was not the basis for his rejection of the settlement. [*Id.* at 3; DE 213-1 at 1.] In any event, in their reply brief, defendants "agree with Mr. Gregory that he should continue to have the ability to file civil suits concerning IDOC

---

[2] After describing his discussion with counsel about the mediator's settlement proposal, Gregory describes the conclusion of the conversation: "This went on, back & forth, for quite some time, until, in complete frustration & anger, I said 'F*** it, send the damn agreement, I'm sick of this crap!!,' and hung up/ended the legal-call." [*Id.*]

5

employees who violate his constitutional rights – so long as those suits are not against these five defendants and do not arise from the same alleged excessive force events as alleged in the operative complaint in this cause of action." [DE 217 at 6.]

## Discussion

The record does not contain the substance of Judge Gotsch's mediator's proposal. But counsel on both sides clearly believed that it had been accepted by everyone and constituted a settlement of the case. [DE 210-1 at 4.] The undisputed facts support the conclusion that on December 19, 2022, Michael Gregory agreed (albeit angrily) to settle his claims against defendants Zimmerman, Florer, Maldonado, Lagunas and Beach for $8,000. This was a meeting of the minds with reasonable certainty as to the terms and conditions of the promises made. *Conwell*, 906 N.E.2d at 813; *Zimmerman*, 826 N.E.2d at 77. Gregory's counsel understood their client to have "begrudgingly consented to receiving $8,0000 in exchange for release of his pending claims," and so notified Judge Gotsch. [DE 212 at 2.] The attorneys expressed the same understanding in their exchange with defense counsel. [DE 210-1 at 4.]

In his own letter, Gregory complains bitterly about the inadequacy of the amount, but does not dispute that he communicated his agreement to it. He was aware that his conversation with his attorneys was taking place on the deadline for his response to the mediator's proposal, and he concluded the exchange by telling them he was tired of the litigation (and, in fairness, tired of arguing with his attorneys) and to have the settlement agreement sent. People settle cases for many different reasons, and exhaustion with the

6

unpleasantness of the litigation process is often one of them. When Gregory wrote his letter to counsel two days later, it expressed buyer's remorse, but it was too late to stick to his guns and insist on a trial instead of the settlement to which he'd assented on the deadline. *Glass*, 788 F.2d at 454.

Gregory argues that no settlement should be enforced because "the parties never reached agreement on material terms of the settlement agreement, including the scope of the release of Plaintiff's claims." [DE 212 at 3.] The scope of the release is actually the only term that Gregory identifies as not having been agreed. I find the contention to be a red herring. The scope of a release is potentially a material term of a settlement agreement. *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997-998 (7th Cir. 2001). Where there was no evidence that settlement talks in an excessive force case against police officers had included any discussion of, much less agreement on, the scope of the plaintiff's release of claims, then-Magistrate Judge Roger Cosbey found that there was no meeting of the minds enabling enforcement of a settlement agreement that the plaintiff refused to sign because it would have released claims beyond those at issue in the case. *Billingsley v. Hoffman*, Cause No. 1:09-cv-274, 2011 WL 38983, at *2 (N.D.Ind. Jan. 5, 2011). But there the defendants sought to enforce a settlement agreement that went beyond what was agreed to, and that the plaintiff rejected for that reason.

Unlike *Billingsley*, here it appears that Gregory rejected the settlement terms previously agreed to simply because he had changed his mind about the adequacy of the compensation, not out of any concern with the scope of the release language, of which he

7

was unaware at the time he communicated his belated rejection of what had earlier been agreed. Gregory argues that there is no evidence that "parties' counsel discussed the scope of the release during the course of their settlement negotiations, or, more importantly, that Mr. Gregory ever manifested any assent to the release of his default judgment against Mr. Woolfork." [DE 212 at 5-6.] I agree with the latter half of that assertion, but not the former.

As to the agreed scope of the release, there is no evidence in the record as to what Judge Gotsch's mediator proposal provided on the subject. A standard (and material) provision of virtually all litigation settlements is the dismissal with prejudice of the claims against the settling defendants, and I do not hesitate to find that such a standard release was understood to be part of the terms of settlement by both plaintiff Gregory and defendants Zimmerman, Lagunas, Maldonado, Florer and Beach. But, as Gregory now argues, there is no reason to believe that Gregory ever contemplated (or that defense counsel should have believed he did) releasing the $15,000 default judgment he had already obtained against defendant Woolfork and was seeking to enforce by various means, in exchange for a settlement of $8,000.

By initiating the proceedings supplemental before Magistrate Judge Gotsch, Gregory made it abundantly clear that he sought to collect on the $15,000 default judgment against defendant Woolfork, who was not represented by the counsel involved in the settlement conference on behalf of the other defendants. Gregory's counsel had discussions with Judge Gotsch about scheduling a settlement conference

8

with counsel for the remaining defendants, and about Gregory's intention to pursue an indemnification claim against the State of Indiana as to the default judgment against Woolfork. [DE 207-1 at 20, 26.] It is beyond dispute that Gregory would not accept a release of the default judgment as a component of his settlement with the remaining defendants for a much smaller sum.

Defendants reply to Gregory's argument by contending, unconvincingly, that "contrary to the Plaintiff's misunderstanding, the draft settlement agreement does not preclude the Plaintiff from pursuing his indemnification claim to collect on the default judgment against Mr. Woolfork." [DE 217 at 1.] Defendants' analysis on this point is overly procedural, relying on their position with respect to the availability of indemnification by the State, which is the subject of plaintiff's Motion for Indemnification now pending. The argument does not successfully rebut plaintiff's counsel's interpretation of the broad language repeated throughout the proposed release, which defines the "Releasees" as "all of IDOC's present *and former* members, *officers, agent, employees*, and successors, known and unknown, *including but not limited to* Kirk Zimmerman, Andres Lagunas, Michael Maldonado, Matthew Florer, and Steven Beach." [DE 210-2 at ¶1 (emphasis added).]

The release describes itself as "full settlement and satisfaction of any and all of Releasor's claims that Releasor brought or could have brought against Releasees related to the events alleged in the amended complaint." [*Id*. at ¶2.] The broad scope is reiterated in ¶4: "Releasees agree to pay Relator Eight Thousand Dollars ($8,000) in full

9

satisfaction of any and all claims against Releasees that Releasor brought or could have brought related to the events alleged in the operative complaint and Releasor's allegations of violations of his rights under federal law and the laws of the State of Indiana." [*Id.* at ¶4.] And again in ¶6: "Releasor agrees that by executing this Release he is fully releasing Releasees from liability for any injuries, costs, damages, or attorney fees allegedly incurred as a result of or incidentally related to any and all of Releasor's claims that were brought or could have been brought related to the events alleged in the complaint occurring prior to execution of this agreement." [*Id.* at ¶6.] The Release goes on to state that Gregory agrees to stipulate to the dismissal of this action with prejudice, and to "withdraw or dismiss any actions, complaints, charges and grievances he may have pending against Releasees with any court, agency or tribunal related to any and all of Releasor's claims that were brought or could have been brought related to the events alleged in the complaint." [*Id.* at ¶7.]

By proposing such a broad definition of those to be released from all liability here and in any other actions—a definition clearly broad enough to include former corrections officer Courtney Woolfork and efforts to collect on the default judgment against him—defendants courted Gregory's rejection of the agreement previously reached. The over-reaching release risked such a response, but (here's why the issue is a red herring) it *did not actually prompt* Gregory's belated rejection of the agreement. Gregory was not aware of the scope of the release when he communicated to his counsel that he no longer wanted to agree to the settlement for $8,000. Instead, Gregory's

10

change of heart appears to be based only on a late-blooming dissatisfaction with the amount of the settlement, which does not suffice to defeat the agreement previously reached.

All of this leads to the following conclusion: Michael Gregory agreed that he would settle his claims against defendants Zimmerman, Lagunas, Maldonado, Florer and Beach for $8,000, and would dismiss his pending claims against them with prejudice.  Gregory's decision was communicated to his counsel, who in turn communicated it to Judge Gotsch and thereby to the remaining defendants.  Defendants over-reached with the document they drafted to effectuate the agreement, but that did not impact Gregory's belated attempt to change his mind and preserve a jury trial in hopes of recovering more money.  Defendants now have expressly acknowledged that "Mr. Gregory is free to sue whomever he desires to sue in IDOC going forward for claims not related to the excessive force events described in the operative complaint, including any indemnification claim he may have."  [DE 217 at 9.]  I will therefore grant defendants' motion and enforce the settlement on terms consistent with my findings. Finally, as for Gregory's Motion for Indemnification against defendant Woolfork [DE 207], that matter is now fully briefed and will be taken up separately.

ACCORDINGLY:

The Motion of defendants Kirk Zimmerman, Andres Lagunas, Michael Maldonado, Matthew Florer and Steven Beach to Enforce Settlement Agreement [DE 210] is GRANTED.

11

Defendants Zimmerman, Lagunas, Maldonado, Florer and Beach are ordered to pay the settlement sum of $8,000 by check made payable to Jenner & Block LLP, in trust for Michael K. Gregory, within 28 days of the entry of this order.

All claims that were or could have been made by Michael K. Gregory against defendants Zimmerman, Lagunas, Maldonado, Florer and Beach arising from the events of April 2, 2017 as pled in Gregory's complaint in this matter are DISMISSED WITH PREJUDICE.

The Clerk shall enter a judgment against defendants Zimmerman, Lagunas, Maldonado, Florer and Beach consistent with this order. Judgment in favor of defendant Lopez can be entered on the basis of the summary judgment granted October 4, 2019 [DE 57]. With the entry of these judgments, this matter is CLOSED, without prejudice to the continued consideration of post-judgment motions pertaining to efforts to collect on Gregory's judgment against defendant Woolfork.

**SO ORDERED** this 21st day of February, 2023.

/s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**